UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TORIBIO FELIPE CASTANON
DOMINGO,

         Plaintiff,

      v.

POLLY KAISER, et al.,

         Defendants.

Case No.  25-cv-05893 (RFL)


**ORDER GRANTING *EX PARTE* TEMPORARY RESTRAINING ORDER; AND ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE**

Re: Dkt. No. 2

     Before the Court is Petitioner-Plaintiff Toribio Felipe Castanon Domingo's *Ex Parte* Motion for Temporary Restraining Order.  (Dkt. No. 2.)  Petitioner-Plaintiff filed his Petition for Writ of Habeas Corpus and *Ex Parte* Motion for Temporary Restraining Order against Acting Field Office Director Polly Kaiser, Acting Director of Immigration and Customs Enforcement ("ICE") Todd M. Lyons, and Secretary of the Department of Homeland Security Kristi Noem. On July 14, 2025, during a routine interview with ICE Enforcement and Removal Operations ("ERO") and just one day before Petitioner-Plaintiff was scheduled to appear at an individual merits hearing in immigration court, Petitioner-Plaintiff was detained by ICE agents.  He was given no notice prior to his detention.

     Now, Petitioner-Plaintiff requests that this Court (1) order Petitioner-Plaintiff's immediate release from ICE custody pending his merits hearing and resolution of his removal proceedings; or alternatively, (2) enjoin Respondents-Defendants from transferring him outside the Northern District of California unless and until he is afforded his scheduled merits hearing and the opportunity to pursue relief from removal with effective assistance of counsel.  For the

following reasons, the Court **GRANTS** the requested Temporary Restraining Order, as modified below.

I.      **BACKGROUND**

Petitioner-Plaintiff is a Guatemalan national who has been residing in the United States since 2003.  He came to the United States seeking asylum.  Since 2003, Petitioner-Plaintiff has been litigating his immigration case, including by filing an application for asylum, withholding of removal, protection under the Convention Against Torture, and an application for cancellation of removal and adjustment of status for certain nonpermanent residents.

Petitioner-Plaintiff was initially detained by ICE on April 22, 2013, pursuant to Immigration and Nationality Act § 236, 8 U.S.C. § 1226, but was released under bond and provided with a notice to appear at further proceedings.  Petitioner-Plaintiff's individual merits hearing is currently scheduled for July 15, 2025.

On July 14, 2025, Petitioner-Plaintiff attended a scheduled interview with ICE Enforcement and Removal Operations.  At the interview, ICE agents detained Petitioner-Plaintiff.  According to declarations submitted in support of Petitioner-Plaintiff's motion, an immigration officer told Petitioner-Plaintiff's lawyer that the reason for his detention was Petitioner-Plaintiff's conviction in 2019.[1]  (Dkt. 2-2 ("McLean Decl.") at 3.)  However, since that conviction, ICE has required no supervision, check-ins, or additional monitoring of Petitioner-Plaintiff, and no material change in circumstance appears to have occurred between that conviction and the present.

Petitioner-Plaintiff works as a cook in two restaurants and is the primary financial provider for his family, and the sole caretaker for his wife, who suffers from diabetes and Graves Disease.  He is the father of two United States citizens, one of whom is a minor.  His daughter has been diagnosed with separation anxiety disorder, which is particularly exacerbated when she is separated from her father, Petitioner-Plaintiff.

---

[1] The memorandum in support of the TRO Motion refers to a 2022 conviction, which the Court assumes is referencing the same 2019 conviction described in the declaration.

## II.     LEGAL STANDARD

The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction. *See Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017) ("[T]he legal standards applicable to TROs and preliminary injunctions are substantially identical." (internal quotation marks and citation omitted)). An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Resources Defense Council, Inc*., 555 U.S. 7, 22 (2008). And "a TRO 'should be restricted to . . . preserving the status quo and preventing irreparable harm just so long as is necessary to hold a [preliminary injunction] hearing and no longer.'" *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018) (quoting *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974). A plaintiff seeking preliminary injunctive relief must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter*, 555 U.S. at 20. "[I]f a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted). "[W]hen the Government is the opposing party," the final two factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

## III.     DISCUSSION

As a preliminary matter, the Court finds that the requirements for issuing a temporary restraining order without notice set out in Federal Rule of Civil Procedure 65(b)(1) are met in this case. Petitioner-Plaintiff's attorney has set out specific facts showing that immediate and irreparable injury, loss, or damage may result before the adverse party can be heard in opposition.

The Court finds that Petitioner-Plaintiff has shown at least that there are "serious questions going to the merits" and that "the balance of hardships tips sharply" in his favor. *Weber*, 767 F.3d at 942.  Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects."  *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)).  Courts have previously found that individuals released from immigration custody on bond have a protectable liberty interest in remaining out of custody on bond.  *See Ortiz Vargas v. Jennings*, No. 20-cv5785, 2020 WL 5074312, at *3 (N.D. Cal. Aug. 23, 2020); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) ("Just as people on preparole, parole, and probation status have a liberty interest, so too does Ortega have a liberty interest in remaining out of custody on bond."); *Romero v. Kaiser*, No. 22-cv-02508, 2022 WL 1443250, at *2 (N.D. Cal. May 6, 2022) ("[T]his Court joins other courts of this district facing facts similar to the present case and finds Petitioner raised serious questions going to the merits of his claim that due process requires a hearing before an IJ prior to re-detention."); *Jorge M. F. v. Wilkinson*, No. 21-cv-01434, 2021 WL 783561, at *2 (N.D. Cal. Mar. 1, 2021).

For similar reasons as those discussed in the aforementioned cases, this Court finds that the three factors relevant to the due process inquiry set out in *Mathews v. Eldridge*, 424 U.S. 319 (1976)—"the private interest that will be affected by the official action," "the risk of an erroneous deprivation . . . and the probable value, if any, of additional or substitute procedural safeguards," and "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail," *id.* at 335—require that Petitioner-Plaintiff be immediately released from custody, and that he be given notice and a pre-detention hearing before a neutral decisionmaker prior to being taken back into custody.

Petitioner-Plaintiff has a substantial private interest in remaining out of custody, which

would allow him to care for and continue to provide for his family, and to ensure that his daughter does not suffer severe anxiety as a result of separation from her father. *See Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). Even if Petitioner-Plaintiff received a prompt post-detention bond hearing under 8 U.S.C. § 1226(a) and was released at that point, he will have already suffered the harm that is the subject of his motion: that is, his potentially erroneous detention. *See Jorge M.F.*, 534 F. Supp. 3d at 1055 (requiring a pre-deprivation hearing regardless of the potential availability of a post-deprivation hearing, and noting that respondents "misapprehend the purpose of a pre-detention hearing: if Petitioner is detained, he will already have suffered the injury he is now seeking to avoid").

As to the second factor, there is a risk of erroneous deprivation that the additional procedural safeguard of a pre-detention hearing would help protect against. Civil immigration detention must be "nonpunitive in purpose" and bear a "reasonable relation" to the authorized statutory purposes of preventing flight and danger to the community. *Zadvydas v. Davis*, 533 U.S. at 690. When immigration agents released Petitioner-Plaintiff in 2013, they determined that he did not pose a flight risk or danger to the community. *See* 8 C.F.R. § 1236(c)(8) ("Any [authorized] officer . . . may . . . release [a noncitizen] not described in section 236(c)(1) of the Act . . . provided that the [noncitizen] must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding."). Though the record does not specify the nature of Petitioner-Plaintiff's 2019 conviction, it seems unlikely that ICE would have allowed him to remain out on bond without any supervision or additional conditions, and without ever seeking to re-detain him, for six years if the conviction posed a material change in circumstances. And, according to his attorney, ICE identified no other basis for re-arresting him. In these circumstances, the risk of erroneous deprivation appears high.

As to the third factor, the government's interest in re-detaining Petitioner-Plaintiff without a hearing is "low," particularly in light of the fact that the only reason cited as a basis for detention does not constitute a change in circumstance, and Petitioner-Plaintiff has appeared for

his scheduled immigration interviews. *See Jorge M.F.*, 2021 WL 783561, at *3; *Ortega*, 415 F. Supp. 3d at 970.

Petitioner-Plaintiff is also likely to suffer immediate and irreparable harm in the absence of preliminary relief. The Ninth Circuit has recognized "irreparable harms imposed on anyone subject to immigration detention," including "the economic burdens imposed on detainees and their families as a result of detention, and the collateral harms to children of detainees whose parents are detained." *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017). Those risks are present here. As previously described, Petitioner-Plaintiff is the primary financial provider for his family and the caretaker for his wife. His daughter also suffers from an anxiety disorder that is particularly exacerbated when she is separated from her father. Additionally, Petitioner-Plaintiff has an individual merits hearing scheduled for July 15, 2025. If he were to be transferred out of the district, or not immediately released, his ability to prepare for that hearing, including by engaging with his counsel, will be impaired. Moreover, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

Finally, the balance of the equities and the public interest, which merge in light of the fact that the government is the opposing party, tip sharply in Petitioner-Plaintiff's favor. "[T]he public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Jorge M. F.*, 2021 WL 783561, at *3 (cleaned up) (quoting *Ortiz Vargas*, 2020 WL 5074312, at *4, and then quoting *Hernandez*, 872 F.3d at 996); *see also Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution."). Without the requested injunctive relief, Petitioner-Plaintiff will not be able to continue to provide for his family, or to prepare for his individual merits hearing, and faces the danger of deprivation of his liberty. Yet the comparative harm potentially imposed on

6

Respondents-Defendants is minimal—a mere short delay in detaining Petitioner-Plaintiff, should the government ultimately show that detention is intended and warranted.  Moreover, a party "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations."  *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983).

This Court therefore joins a series of other district courts that have recently granted temporary restraining orders barring the government from detaining noncitizens who have been on longstanding release in their immigration proceedings, without first holding a pre-deprivation hearing before a neutral decisionmaker.  *See, e.g.*, *Diaz v. Kaiser*, No. 25-cv-05071, 2025 WL 1676854, at *2 (N.D. Cal. June 14, 2025); *Garcia v. Bondi*, No. 25-cv-05070, 2025 WL 1676855, at *3 (N.D. Cal. June 14, 2025).  Although Petitioner-Plaintiff filed his motion shortly after being detained, rather than immediately beforehand, the same reasoning applies to his situation.  His liberty interest is equally serious, the risk of erroneous deprivation is likewise high, and the government's interest in continuing to detain him without the required hearing is low.  *See Doe v. Becerra*, No. 25-cv-00647, 2025 WL 691664, at *6 (E.D. Cal. Mar. 3, 2025) (granting a TRO as to an individual who had been detained over a month earlier).

Petitioner's immediate release is required to return him to the status quo.  The status quo refers to "the last uncontested status which preceded the pending controversy."  *Doe v. Noem*, No. 25-cv-00633, 2025 WL 1141279, at *9 (W.D. Wash. Apr. 17, 2025) (citing *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000)).  That is the moment prior to the Petitioner's likely illegal detention.  *See Singh v. Andrews*, No. 25-cv-00801, 2025 U.S. Dist. LEXIS 132500, at *13 (E.D. Cal. July 11, 2025) (entering a preliminary injunction ordering immediate release of immigration detainee on similar circumstances); *Kuzmenko v. Phillips*, No. 25-cv-00663, 2025 WL 779743, at *2 (E.D. Cal. Mar. 10, 2025) (granting a temporary restraining order requiring immediate release of the petitioner back to home confinement from

custody, as a restoration of the status quo).[2]

Accordingly, the Court hereby **GRANTS** Petitioner-Plaintiff's Motion for a Temporary Restraining Order.  Under Federal Rule of Civil Procedure 65, a court "may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c).  The rule "invests the district court 'with discretion as to the amount of security required, if any,'" and the court "may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct."  *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (quoting *Barahona–Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999)).  In this case, in light of the minimal risk of harm to the government, the Court determines that security is not required.

## IV.    ORDER

For the foregoing reasons, **IT IS HEREBY ORDERED** that Petitioner-Plaintiff's *Ex Parte* Motion for Temporary Restraining Order is **GRANTED** to preserve the status quo pending further briefing and a hearing on this matter. Respondents-Defendants are **ORDERED** to immediately release Petitioner-Plaintiff from Respondents' custody and **ENJOINED AND RESTRAINED** from re-detaining Petitioner-Plaintiff without notice and a pre-deprivation hearing before a neutral decisionmaker.  This Order shall remain in effect until **Friday, July 25, 2025, at 5:00 p.m.**

The Petition for Writ of Habeas Corpus, Motion for Temporary Restraining Order, and this Order **SHALL** be served on Respondents-Defendants such that they receive actual notice as soon as practicable, and Petitioner-Plaintiff shall file proof of such service by no later than **Wednesday, July 16, 2025.**  Respondents-Defendants shall provide a status report confirming

---

[2] Because Petitioner's release simply returns him to the status quo, it is not a mandatory injunction, which is subject to a higher standard.  In any event, even if Petitioner's release were understood to be a mandatory injunction, that standard would be met.  "First, unlawful detention certainly constitutes 'extreme or very serious' damage, and that damage is not compensable in damages."  *Hernandez*, 872 F.3d at 999.  And second, as detailed above, the merits of the case are not "doubtful."  *Id.*

Petitioner-Plaintiff's release by **Tuesday, July 15, 2025**.

      Respondents-Defendants are **ORDERED TO SHOW CAUSE** in-person at a hearing in the courtroom of the assigned Judge, or as otherwise ordered by that Judge, on **Friday, July 25, 2025, at 1:00 p.m.** why a preliminary injunction should not issue. Respondents-Defendants shall file a response to Petitioner-Plaintiff's motion by no later than **Friday, July 18, 2025**. Any reply shall be filed by **Tuesday, July 22, 2025**.

      **IT IS SO ORDERED.**

Dated: July 14, 2025, at 7:47 p.m.

RITA F. LIN
United States District Judge