UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TORIBIO FELIPE CASTANON DOMINGO,<br><br>   Plaintiff,<br><br>   v.<br><br>POLLY KAISER, et al.,<br><br>   Defendants. | Case No. 25-cv-05893-NW<br><br>**ORDER GRANTING PRELIMINARY INJUNCTION**<br><br>Re: ECF No. 5 |

This case is about due process. Specifically, it is about the process due to Mr. Castanon.

On July 14, 2025, just one day before Petitioner-Plaintiff Toribio Felipe Castanon Domingo's scheduled individual merits hearing before an immigration judge, the United States Department of Homeland Security ("DHS") detained Mr. Castanon during what DHS characterized would be a "routine interview."[1] The same day, Mr. Castanon filed a petition for a writ of habeas corpus and a motion for a temporary restraining order ("TRO") against Polly Kaiser, in her official capacity as Acting San Francisco Field Office Director of U.S. Immigration and Customs Enforcement ("ICE"), Todd M. Lyons, in his official capacity as Acting Director of ICE, and Kristi Noem, in her official capacity as the Secretary of the U.S. Department of Homeland Security ("DHS") (collectively, "the Government"), requesting release from detention.

On July 14, 2025, the Court (Lin, J.) issued a TRO requiring the Government to release Mr. Castanon and enjoining the Government from re-detaining Mr. Castanon without first providing him with notice and a hearing before a neutral decision-maker, and an order to show cause why a preliminary injunction should not issue. On July 15, 2025, the Government filed a

---

[1] In his briefing, Petitioner refers to himself as "Mr. Castanon." The Court uses his preferred name here.

status report indicating that Mr. Castanon was released from detention pursuant to the Court's Order.

On July 30, 2025, the undersigned judge held a preliminary injunction hearing. Having considered the parties' briefs, the relevant legal authority, and counsel's arguments at the hearing, the Court GRANTS Petitioner-Plaintiff's motion for a preliminary injunction.

## I.     BACKGROUND

Mr. Castanon is a 53-year-old Guatemalan national who has been residing in the United States since 2003 when he "fled his country due to the forced displacement from his land through lethal force by non-indigenous Guatemalans."[2]  Compl. ¶ 27.  Mr. Castanon's 2003 entry was "his first and only entry into the United States."[3]   Id. ¶ 29.

Since arriving in the United States approximately 22 years ago, Mr. Castanon has lived at the same address in Santa Rosa, California.  He is married and is the father of two United States citizens, one of whom is a minor.  He works as a cook in two restaurants to provide for his family.  Mr. Castanon is the sole financial support for his wife and minor child.  His daughter was diagnosed with separation anxiety disorder, which is exacerbated when she is separated from her father.  Mot. for TRO at 8, ECF No. 2.  Additionally, Mr. Castanon is "the sole caretaker of his wife, who suffers from diabetes and Graves disease."  Compl. ¶ 31.

On January 26, 2012, Mr. Castanon was convicted of driving under the influence in violation of California Vehicle Code § 23152(b).  On March 28, 2013, he was again convicted of driving under the influence and of driving with a suspended or revoked driver's license in violation of California Vehicle Code § 14601.5(a).

---

[2] Unless otherwise noted, the background information comes directly from Plaintiff's Petition for Writ of Habeas Corpus and Complaint, ECF No. 1 ("Compl.").

[3] Mr. Castanon states that he entered the United States in 2003.  Compl. ¶¶ 27, 29.  Exhibit 2 (the Record of Deportable/Inadmissible Alien) to the Razalan Declaration states that Mr. Castanon "last entered the United States on [sic] 2009 through Texas."  Decl. of Deportation Officer Julio G. Razalan, ¶ 6, ECF No. 17-1 ("Razalan Decl.").  Notwithstanding that Exhibit, in its opposition, the Government does not contest Mr. Castanon's assertion that his single date of entry into the United States was approximately 22 years ago in 2003.  Opp'n to Mot. for Preliminary Injunction, 3, ECF No. 17 ("Opp'n").  Even if the Court uses the date of entry noted in Exhibit 2 to the Razalan Declaration, Mr. Castanon has resided in the United States consistently for 16 years.

2

On April 22, 2013, a Warrant for Arrest of Alien, Form I-200, was issued for Mr. Castanon, and he was arrested by ICE. The same day, ICE conducted a custody determination pursuant to INA § 236(a) and 8 U.S.C. § 1226 and determined that Mr. Castanon could be released on a $2,000 bond. Razalan Decl. ¶ 8, Ex. 3. ICE imposed no additional conditions or stipulations on Mr. Castanon's bond. Mr. Castanon did not request a bond hearing to challenge the determination, and the bond determination was not reviewed by an immigration judge. Transcript of July 30, 2025 Oral Argument at 9 ("Tr.").[4] When Mr. Castanon posted the bond and was released, he was served with a Notice to Appear, which charged him with removability under INA § 212(a)(6)(A)(i) for allegedly arriving in the United States without being admitted or paroled after inspection.[5] *See* 8 U.S.C. § 182(a)(6)(A)(i); Razalan Decl. ¶ 8, Ex. 1.[6]

In 2017, Mr. Castanon sought relief from removal: he applied for asylum, withholding of removal, protection under the Convention Against Torture, and for Cancellation of Removal and Adjustment of Status for Certain Nonpermanent Residents. Tr. at 26; Compl. ¶ 41; Razalan Decl. ¶ 10. On July 15, 2025, Mr. Castanon was scheduled to appear before an immigration judge for an individual merits hearing regarding his immigration and asylum applications. Plaintiff's counsel informed the Court that in the 22 years Mr. Castanon has resided in the United States he has never appeared before an immigration judge. Tr. at 9-10.

In the interim, in 2019, Mr. Castanon was again arrested for driving under the influence. For reasons that are unclear to the Court, Mr. Castanon's conviction for that offense did not occur until January 10, 2022, when he was convicted of driving under the influence in violation of

---

[4] The Court cites to the rough transcript from the July 30, 2025 preliminary injunction hearing because, as of the date of this Order, the reporter has not yet certified the final transcript.

[5] During the hearing, Plaintiff's counsel explained that Mr. Castanon was scheduled to appear for a Master Calendar Hearing in approximately 2023, but the Government cancelled the hearing due to COVID-19 and reset the matter as an individual merits hearing for July 15, 2025. Tr. at 9-10.

[6] In the declaration filed in support of the Government's opposition, Officer Razalan states that, "On January 6, 2015, an Immigration Judge sustained Mr. Castanon's charge of removability." Razalan Decl. ¶ 10. However, during oral arguments, Plaintiff's counsel stated that Mr. Castanon has never appeared before an immigration judge. Tr. at 9-10. It appears that the decision to "sustain" Mr. Castanon's "charge of removability" occurred on the papers, and Mr. Castanon did not appear before an immigration judge for this determination.

3

California Vehicle Code § 23152(b), and because his daughter was in the car, of abusing or endangering the health of a child in violation of California Penal Code § 273(a). Compl. ¶ 33; Razalan Decl. ¶ 9. Mr. Castanon was originally sentenced to 120 days in jail, restitution and fines (which were suspended), and four years of probation. However, on September 27, 2022, his probation was revoked when he violated conditions of probation.[7] On October 13, 2022, his sentence was amended to add three days in jail and he was required to wear an alcohol monitor for fifteen days. Razalan Decl. ¶ 9.

With the exception of the single day of April 22, 2013, it does not appear that Mr. Castanon has ever been detained by DHS (including by ICE officers) between his entry into the United States in 2003, and his detention on July 14, 2025. In addition, from April 2013, until July 14, 2025, Mr. Castanon was not required to check-in with ICE, including after his 2022 conviction.

On June 16, 2025, Mr. Castanon's bond obligator received a "Notice to Obligator to Deliver Alien," which stated that Mr. Castanon was required to appear for an "interview" at the ICE San Francisco office on July 14, 2025, at 10:00 a.m. The Notice provided no reasons for the appointment; it did not state that Mr. Castanon might lose his liberty during the interview, nor did it indicate the meeting might result in his "removal." Decl. of Badria Mryyan, ¶ 7, ECF No. 2-1 ("Mryyan Decl.").

In the following days, Mr. Castanon's counsel reached out to ICE numerous times, by phone, email, and in person, to request that the newly set appointment be rescheduled. In those communications, counsel explained that Mr. Castanon had an individual merits hearing that was already scheduled – as it had been for years – for the next day, July 15, 2025, at 10:00 a.m. Mryyan Decl. ¶ 8. Counsel was told twice by deportation officers that the purpose of the appointment was to interview Mr. Castanon. Mryyan Decl. ¶¶ 19, 23. When counsel asked "Deportation Officer Liu" in the San Francisco office "if DHS intended to arrest Mr. Castanon Domingo at this appointment, Officer Liu did not respond." Mryyan Decl. ¶ 24. The ICE officials

---

[7] The Court is not aware of how Mr. Castanon violated his conditions of probation.

refused to reschedule the appointment and continued to inform Mr. Castanon's counsel that it was "just an interview." Compl. ¶ 45; Decl. of Leah McLean, ¶ 7, ECF No. 2-2 ("McLean Decl.").

On July 14, 2025, at 10:00 a.m., Mr. Castanon, accompanied by his counsel, reported for the appointment. They met with Officer Julio Razalan in the San Francisco ICE office. McLean Decl. ¶ 14. Officer Razalan asked Mr. Castanon a few questions about his medications and childcare responsibilities. Counsel explained that Mr. Castanon was responsible for daily care of his daughter. McLean Decl. ¶ 14.

"[R]oughly thirty seconds had transpired" since Mr. Castanon's arrival at the ICE office before Officer Razalan informed Mr. Castanon's counsel that he intended to detain Mr. Castanon due to his 2019 conviction. McLean Decl. ¶ 15. Counsel informed Officer Razalan that Mr. Castanon was the sole provider for his family, "his daughter suffered suicidal ideations when thinking of her father's absence," his wife was not able to work, and that he was "no longer drinking, [and] attended church regularly." McLean Decl. ¶ 16. Officer Razalan told counsel, "there was nothing he could do because 'management decided earlier that morning'" that Mr. Castanon should be "remanded" to detention. McLean Decl. ¶ 17. Mr. Castanon was not provided with more "specific reasons for the detention." Compl. ¶ 47.

Officer Razalan immediately issued a warrant for Mr. Castanon's arrest (Form I-200). Razalan Decl. ¶ 12, Exs. 10, 14. DHS then cancelled Mr. Castanon's bond. At approximately 2:43 p.m., "due to Petitioner's most recent criminal convictions," Officer Razalan conducted what the Government called a "custody determination," which was followed by Officer Razalan detaining Mr. Castanon pursuant to INA § 236(a) and issuing a Record of Deportable/Inadmissible Alien (Form I-213). Razalan Decl. ¶ 12, Ex. 12. "At approximately 3:27pm, ICE transferred Petitioner to Golden State Annex ("GSA")." Razalan Decl. ¶ 12, Ex. 13.

Later the same day, on July 14, 2025, Mr. Castanon promptly filed a petition in this Court for a writ of habeas corpus asserting that his continued detention without a hearing before a neutral decision-maker (an immigration judge) violated his rights to substantive and procedural due

process.[8] ECF No. 1. He additionally moved for a TRO and preliminary injunction enjoining the Government from re-detaining him without notice and a hearing in front of an immigration judge. ECF No. 2.

At 7:47 p.m. on July 14, 2025, the Court (Lin, J.) issued a TRO requiring the Government to release Mr. Castanon, and enjoining the Government from re-detaining Mr. Castanon without first providing him with notice and a hearing. ECF No. 5 ("July 14, 2025 TRO"). The Court held that Mr. Castanon had shown that there were serious questions going to the merits of his claims, he was likely to suffer immediate and irreparable harm in the absence of preliminary relief, and the balance of equities and public interest tipped sharply in his favor. *Id*. The Court concluded that Mr. Castanon's "immediate release [was] required to return him to the status quo." *Id*. at 7.

Mr. Castanon arrived at the GSA detention facility at 10:00 p.m. on July 14, 2025. He was not immediately released. ICE kept him in custody for almost 24 hours until "approximately 6:45pm on July 15, 2025." Razalan Decl. ¶ 12.

By the time ICE complied with the Court's TRO, the scheduled time for Mr. Castanon's individual merits hearing, set for July 15, 2025, at 10:00 a.m., had passed. Had he been released when the Order was issued, or soon after that evening, Mr. Castanon could have made his scheduled July 15, 2025 individual merits hearing, which would have mooted this case. ICE rescheduled Mr. Castanon's individual merits hearing for December 1, 2025, more than four months out.

On July 30, 2025, the Court held a hearing regarding Mr. Castanon's motion for a preliminary injunction. ECF No. 19. The Court ordered the terms of the July 14, 2025 TRO to stay in effect pending a further order of the Court.

---

[8] A neutral adjudicator or decision-maker in this context is an immigration judge. *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176–77 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018) (discussing that noncitizens who dispute that a material change in circumstances justify rearrest, are "entitled to a prompt hearing before an immigration judge.").

## II. LEGAL STANDARD

A preliminary injunction is a matter of equitable discretion and "an extraordinary remedy never awarded as of right." *Winter v. Nat. Resources Def. Council, Inc.*, 555 U.S. 7, 25 (2008). A plaintiff seeking preliminary injunctive relief must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Id*. at 20. Courts may still issue a preliminary injunction if a "plaintiff can only show that there are serious questions going to the merits – a lesser showing than likelihood of success on the merits," if the balance of equities "tips sharply in the plaintiff's favor" and if the plaintiff establishes that they are likely to suffer irreparable harm and that an injunction is in the public interest. *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted). Where, as here, the Government is a party, the last two *Winter* factors merge. *See Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (questions of whether the balance of equities tips in plaintiffs favor and whether injunction is in the public interest merge when the government is a party).

## III. DISCUSSION

The issues before the Court are whether Mr. Castanon has demonstrated that he has a liberty interest in his conditional release, and if he has, what process he is due before the Government may lawfully deprive him of that liberty interest. *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

After Mr. Castanon was arrested by ICE in 2013, the Government determined that Mr. Castanon was not a danger to the community nor a flight risk and granted him conditional release on bond pending his individual merits hearing. Mr. Castanon argues, and the Court agrees, that because he has been granted conditional release and relied upon that interest for the last 12 years, the Government may not re-arrest him without first presenting evidence of a material change in Mr. Castanon's circumstances; and, if Mr. Castanon disagrees with the Government's determination, due process guarantees him a prompt hearing before an immigration judge.

7

The Government argues that Mr. Castanon's opportunity to *request* a hearing *after* he is detained is sufficient due process. The Government has provided no guarantee that it would grant any such request, let alone that it would do so within a reasonable time.

This case does not concern an exigent situation where someone is arrested when illegally crossing the border, nor is it about someone detained following a preliminary hearing where a neutral decision-maker concluded that detention was necessary to prevent a defendant from fleeing the jurisdiction, or to protect the people of the United States from harm. Instead, this situation is one where the Government: concluded that it would not seek Mr. Castanon's detention; granted him conditional release; and elected not to hold a hearing with an immigration judge for years (including after Mr. Castanon requested asylum) despite being fully aware of Mr. Castanon's consistent presence and location in the United States.

Mr. Castanon is due a meaningful and timely process to protect him from an erroneous deprivation of his liberty interest in his conditional release. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) ("The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner."). The *process* due is essential. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (The Due Process Clause encompasses "a guarantee of fair procedure.").

The Court addresses each of the *Winter* factors in turn and finds that Mr. Castanon has met his burden on each.

A.     **Mr. Castanon has Demonstrated Serious Questions Going to the Merits of His Procedural Due Process Claim**

Mr. Castanon has demonstrated that there are serious questions going to the merits of his claim that, under the Due Process Clause of the Fifth Amendment of the United States Constitution, he is entitled to a prompt hearing before an immigration judge before he may be re-detained.[9]

---

[9] Mr. Castanon additionally brings claims for violation of his substantive due process rights, violation of immigration statutes and regulations, and violation of his right to a fair hearing. The Court need not address these additional claims at this preliminary stage of the case. Granting Mr. Castanon preliminary injunctive relief enjoining the Government from detaining him without notice or a hearing prior to detention addresses the threat of any other imminent deprivation of rights raised in his other claims.

8

The Due Process Clause prohibits the Government from depriving individuals of their liberty without due process of law. U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). This liberty interest applies to people who are not citizens — people who are at times referred to as "aliens" in statutes, regulations, and caselaw. *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017) (Due Process Clause "protections appl[y] 'to all "persons" within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent,' and to immigration detention as well as criminal detention.") (quoting *Zadvydas*, 533 U.S. at 693 (referring to noncitizens as "aliens")).

Individuals conditionally released from detention have a protected interest in their "continued liberty." *Young v. Harper*, 520 U.S. 143, 147 (1997); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) (finding that noncitizen released from immigration detention had "a liberty interest in remaining out of custody on bond."). "[T]he liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (holding that a person has an interest in their release regardless of whether they are subject to extensive conditions of release). While the government may have discretion to initially detain or release an individual in certain circumstances, as soon as the government has made the decision to release an individual from custody it makes "an implicit promise" that the person's liberty "will be revoked only if [the individual] fails to live up to the . . . conditions [of release]." *Id.* Termination of this liberty "inflicts a 'grievous loss' on the parolee and often on others." *Id*.

The Supreme Court has therefore held that, as a general rule, "the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon*, 494 U.S. at 127; *see also Romero v. Kaiser*, No. 22-cv-02508-TSH, 2022 WL 1443250, at *2 (N.D. Cal. May 6, 2022) ("[T]his Court joins other courts of this district facing facts similar to the present case and finds Petitioner raised serious questions going to the merits of his claim that due process requires a hearing before an IJ prior to re-detention.").

To determine what procedures are constitutionally sufficient to protect Mr. Castanon's liberty interest, the Court applies the three-part test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976).[10] *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206–07 (9th Cir. 2022). The *Mathews* test balances three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

Each of the three *Mathews* factors supports Mr. Castanon's constitutional right to a hearing before an immigration judge, prior to Mr. Castanon being detained: Mr. Castanon has identified a strong liberty interest in remaining out of detention on bond release; without a hearing there is a significant risk of erroneous deprivation of his liberty interest; and, the Government has a limited interest in detaining Mr. Castanon without first providing him with a hearing.

### 1. Mr. Castanon's Liberty Interest

Mr. Castanon has a substantial interest in remaining out of custody on bond. If re-detained he will be removed from his family, including from his two U.S. citizen children, one of whom suffers from separation anxiety. He is the sole caretaker for his wife, who is experiencing a variety of medical concerns, and the sole financial support for his wife and minor child. If re-detained, Mr. Castanon will not be able to financially support his family, including his minor daughter. He may lose his employment. *Diaz v. Kaiser*, No. 3:25-CV-05071-BLF, 2025 WL 1676854, *3 (N.D. Cal. June 14, 2025) (holding that petitioner had a substantial private interest in remaining out of custody where it would enable to him to "work[], liv[e] at home, and be[] with family and friends to form the enduring attachments of normal life").

---

[10] In *Rodriguez Diaz*, the Ninth Circuit applied the *Mathews* test to a procedural due process challenge to detention under § 1226(a). While the Ninth Circuit "assume[d] without deciding that *Mathews* applies," the court explained that "*Mathews* remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context." 53 F.4th at 1207.

10

Mr. Castanon has "completed all requirements of his conditional sentences" stemming from his 2012, 2013, and 2022 convictions, and "is currently completing the probation term requirements." Mryyan Decl. at 5, ¶ 17; Compl. ¶ 33. He completed an 18-month program focused on the adverse effects of alcohol and has "made many lifestyle changes to prioritize his sobriety." Mryyan Decl. at 5, ¶ 19. For the last twelve years, ICE has not required any supervision or check-ins from Mr. Castanon; this includes no additional supervision since his 2022 conviction. Compl. ¶¶ 37, 53.

The Government raises three arguments in response. First, the Government argues that § 1226(a) does not provide for a pre-detention hearing, and instead, "noncitizens detained under Section 1226(a) are provided with multiple avenues to seek review of their detention *once they are in custody*." Opp'n at 7 (emphasis in original); *see* 8 U.S.C. § 1226; 8 C.F.R. § 236(c)(9). The Government argues that, following the Ninth Circuit's holding in *Rodriguez Diaz*, the procedures provided in § 1226(a) for a post-detention hearing are constitutionally sufficient. *See Rodriguez Diaz*, 53 F.4th at 1193.

Pursuant to § 1226(a), "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). "When a person is apprehended under § 1226(a), an ICE officer makes the initial custody determination. The alien will be released if he 'demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding.'" *Rodriguez Diaz*, 53 F.4th at 1196 (quoting 8 C.F.R. § 236.1(c)(8)) (internal citation omitted). After this initial custody determination, a detainee may request a bond hearing before an immigration judge. 8 C.F.R. §§ 236.1(d)(1), 1003.19. Under § 1226(b), DHS, through powers delegated by the Attorney General, "may revoke a bond or parole authorized under subsection (a), rearrest the alien under the original warrant, and detain the alien." 8 U.S.C. § 1226(b). The Government argues that, under *Rodriguez Diaz*, "[o]nce a noncitizen has had their bond or parole revoked under § 1226(b) and they are taken into custody, their detention is once again governed by § 1226(a) and its implementing regulations." Opp'n at 4. Therefore, the Government argues that essentially at any

11

time, without notice or a pre-detention hearing, Mr. Castanon "may be arrested and detained pending a decision" on whether he may be removed from the United States. *See* § 1226(a).

With this interpretation, the Government asks this Court to expand the holding in *Rodriguez Diaz*. In *Rodriguez Diaz*, the Ninth Circuit held that a noncitizen, *who was being held in custody* pursuant to § 1226(a), was not entitled to a *second* bond hearing where the petitioner could not show a material change in circumstance since their first bond hearing, other than the duration of their detention. *Id*.

In *Rodriguez Diaz*, the Ninth Circuit did not consider the question before this Court. Here, Mr. Castanon has never received a bond hearing. Additionally, unlike Petitioner Rodriguez Diaz, with the exception of one day on April 22, 2013, Mr. Castanon has been granted conditional liberty in the United States for more than 12 years. At oral argument, defense counsel confirmed that the Government was not aware of any case in which a Court has applied the holding in *Rodriguez Diaz* to support the position the Government is now taking – namely that the Government may lawfully deprive a person of liberty without due process beforehand.[11]

Here, pursuant to § 1226(a), Mr. Castanon was released from his initial one-day detention in 2013 and was granted release on bond. The Government's decision to release Mr. Castanon in 2013 reflects ICE's determination that he is neither a danger to the community nor a flight risk. 8 C.F.R. § 1236.1(c)(8) (to release a noncitizen from custody, ICE must find that the noncitizen "demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons" and that the noncitizen is "likely to appear for any future proceeding."). Unless or until there has been a material change in circumstances, Mr. Castanon has a substantial interest in remaining out of custody, under the conditions imposed as part of his bond release. *Diaz v. Kaiser*, 2025 WL 1676854 at *3 (cleaned up) (holding that petitioner had a substantial private interest in remaining out of custody where it would enable to him to work, live at home, and be with family and friends "to form the enduring attachments of normal life"). Mr. Castanon relied upon the bond determination and expected that his liberty would not be revoked unless he

---

[11] The Government conceded this point during the hearing stating, "the Court would need to apply *Rodriguez Diaz* to un-detained individuals[.]" Tr. at 12, 18.

12

"failed to live up to the conditions of his release" – unless a neutral decision-maker determined Mr. Castanon to be a danger to the community or a flight risk. *Morrissey*, 408 U.S. at 482. Mr. Castanon justifiably relied upon ICE's determination: he started a family, secured employment, became a valued member of his community, made medical choices for his wife and daughter, and is raising his family (with two U.S. citizen children) in the United States. With the exception of the one day in 2013 when ICE elected to release him on bond, Mr. Castanon has not been detained in the United States.

Second, in the alternative, the Government argues that it is lawful to re-detain Mr. Castanon because there was a change in Mr. Castanon's circumstances due to his January 2022 conviction for driving under the influence and for child endangerment. Opp'n at 7; *see Matter of Sugay*, 17 I. & N. Dec. 637, 640 (BIA 1981) (holding that "no change should be made [to an individual's detention status]. . . absent a change of circumstance"). During oral argument, counsel for the Government confirmed that the Government views Mr. Castanon's 2019 arrest, which resulted in the 2022 conviction, as the changed circumstances initiating Mr. Castanon's arrest by ICE officers on July 14, 2025. Tr. at 14. However, the Government provided no explanation as to why it took no steps to hold a hearing to address those changed circumstances at any point since 2019. The Government had every opportunity to detain Mr. Castanon immediately following his 2019 arrest, or his resulting 2022 conviction (as it did in 2013). Yet in the intervening years the Government did not determine that there was a change in Mr. Castanon's circumstances that demonstrated he was a flight risk or a danger to the community.

Mr. Castanon's convictions are serious. Even with the full life that Mr. Castanon has created in the United States, those convictions might compromise his opportunity for asylum. But that is the purview of an immigration judge, as the neutral decision-maker who will consider the merits of Mr. Castanon's claims, the impact of his convictions, and his ultimate immigration status in the United States. This is not the purview of this Court. It is only for this Court to determine whether Mr. Castanon has been deprived of his liberty without due process of law.

Third, the Government argues that although it does not believe that the *Mathews* balancing test should apply, even if the Court does apply *Mathews*, Mr. Castanon does not have a substantial

13

private liberty interest in his conditional release. The Government contends that, "Petitioner's status [as a noncitizen] and recidivism reduce his liberty interest here." Opp'n at 10. Stated simply, the Government is asking the Court to hold that noncitizens are not guaranteed the same process that is due to citizens under the Fifth Amendment for review of revocation of their conditional liberty. *See e.g.*, *Young*, 520 U.S. at 147 (holding that conditional liberty of preparolee citizen was not "beyond procedural protection"). This Court will not do so.

Beyond the plain language of the Fifth Amendment, the United States Supreme Court has repeatedly held that fundamental liberty interests apply regardless of an individual's immigration status. *Zadvydas*, 533 U.S. at 693; *Plyler v. Doe*, 457 U.S. 202, 210 (1982); *Mathews v. Diaz*, 426 U.S. 67, 77 (1976); *Wong Wing v. United States*, 163 U.S. 228, 238 (1896). Just this year, this Supreme Court affirmed its commitment to this core constitutional tenet: "'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." *Trump v. J. G. G.*, 604 U.S. __, 145 S. Ct. 1003, 1006 (2025) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). The Supreme Court has further clarified that fundamental liberty interests apply to people who have been conditionally released. *See e.g.*, *Morrissey*, 408 U.S. at 482 ("parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions."). This Court will not diverge from these settled principles.

Mr. Castanon, a noncitizen conditionally released on immigration bond, possesses an interest in his continued liberty. Pursuant to the Fifth Amendment, he has a constitutional due process right to a timely hearing before being re-detained.

### 2. Mr. Castanon Faces a Substantial Risk of Erroneous Deprivation of His Liberty Interest

There is a substantial risk that the Government will erroneously deprive Mr. Castanon of his liberty interest if he is not granted a timely hearing before an immigration judge prior to being detained.

The Government takes the position that ICE is entitled to unilaterally "re-detain" Mr. Castanon without a prior hearing before an immigration judge. The Government takes this

14

position even though it released Mr. Castanon on bond more than a dozen years ago after concluding he was not a danger to the community nor a flight risk. The Government argues that Mr. Castanon will be afforded sufficient due process because he may "seek review" of his detention after he is detained. Opp'n at 7.[12] The Government does not guarantee if or when it would provide Mr. Castanon with a hearing if he made such a request.

The Government provided no assurances during oral argument that ICE does not plan to immediately re-detain Mr. Castanon. Mr. Castanon's detention would potentially last for months, at great financial and emotional cost to him and his family, and that is assuming his December 1, 2025 individual merits hearing goes forward as scheduled — a hearing that originally took Mr. Castanon years to get. Mr. Castanon only missed that hearing because ICE elected to "interview" him on July 14, 2025, and then detained and did not release him until after the hearing time on July 15, 2025 had passed. This detention occurred, despite the Court's July 14, 2025 Order that required Mr. Castanon's release.

When "[a] petitioner has not received any bond or custody redetermination hearing," "the risk of an erroneous deprivation of liberty is high" because neither the government nor the petitioner has had an opportunity to determine whether there is any valid basis for the detention. *Singh v. Andrews*, No. 1:25-CV-00801-KES, 2025 WL 1918679 (E.D. Cal. July 11, 2025) (simplified). Further, in the Government's contemplation of § 1226(a) proceedings, Mr. Castanon would only be provided with a hearing if he requested one after he was already in custody. "Civil immigration detention is permissible only to prevent flight or protect against danger to the community." *Pinchi v. Noem*, No. 5:25-CV-05632-PCP, 2025 WL 2084921, at *5 (N.D. Cal. July 24, 2025) (citing *Zadvydas*, 533 U.S. at 690). Here, the Government has offered no evidence that Mr. Castanon's detention would serve either purpose. Mr. Castanon therefore runs a high risk of

---

[12] The Government states, "[i]nstead of being guaranteed *pre*-detention IJ review, noncitizens detained under Section 1226(a) are provided with multiple avenues to seek review of their detention *once they are in custody* . . . The Constitution does not require that the government conduct another bond hearing prior to taking Petitioner into custody again, when he could promptly seek review of his detention if re-arrested." Opp'n at 7 (emphasis in original).

15

1  erroneously being deprived of his liberty if he is not granted a hearing before an immigration
2  judge prior to being detained.

### 3. The Government Does Not Have a Strong Countervailing Interest

Turning to the final *Mathews* factor, the Court finds that there is no countervailing interest from the Government that supports conducting a hearing only after Mr. Castanon has been re-detained. The Government articulated no legitimate interest during oral arguments, and expressed no concern that Mr. Castanon is a flight risk, or that he poses a threat to the community. In the twelve years since ICE's initial bond determination and in the three years since Mr. Castanon's conviction, Mr. Castanon has complied with every ICE request and completed his sentence. While the Court does not minimize the seriousness of Mr. Castanon's convictions, the Government offered no explanation regarding what has changed in Mr. Castanon's life during the last three years that constitutes a change in material circumstances that warrants his loss of liberty without due process. *See Sugay*, 17 I. & N. Dec. at 640.

The Government argues that Mr. Castanon's request for a pre-deprivation hearing "would impose administrative and resource burdens on the government that would frustrate its ability to make congressionally authorized detention decisions," and that "[e]very extra hearing before an IJ adds further congestion to an already backlogged immigration-court system." Opp'n at 12. The Government contends that it has a strong interest in "avoiding these extra-regulatory burdens." Opp'n at 12. During the hearing, counsel for the Government asserted that the Government does not have the resources to provide Mr. Castanon with a pre-deprivation hearing or to move his individual merits hearing forward. The Government explained that there is currently an insufficient number of immigration judges to handle the volume of people who are being processed through the immigration courts. Tr. at 21.

The Government has provided no explanation as to why the time or cost of providing a pre-deprivation hearing to a person who is currently at liberty would exceed the extensive resources that would be necessary to detain them. In this case, had ICE simply waited one day, Mr. Castanon would have had a hearing before a United States immigration judge who would have provided Mr. Castanon with the due process that is guaranteed under our Constitution. That

immigration judge could have put Mr. Castanon on the path to deportation, or to asylum, either of which is presumably a more efficient, and economical outcome for the United States than maintaining Mr. Castanon in a prolonged detention.

Each of the *Mathews* factors leans in favor of Mr. Castanon. Therefore, Mr. Castanon has shown a likelihood of success on the merits of his claim that the Due Process Clause entitles him, prior to any re-detention, to an individual merits hearing before an immigration judge.

**B.     Mr. Castanon has Demonstrated that He is Likely to Suffer Irreparable Harm without Preliminary Relief**

Mr. Castanon is likely to suffer immediate and irreparable harm in the absence of preliminary injunctive relief because he faces a risk of immediate re-detention by ICE, which would be in violation of his procedural due process rights. Again, the Government made no assurances during oral argument that ICE does not plan to immediately re-detain Mr. Castanon.

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez*, 872 F.3d at 994 (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Vasquez Perdomo v. Noem*, No. 25-4312, 2025 WL 2181709, at *23 (9th Cir. Aug. 1, 2025) (quoting *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005)).

Re-detention would likely have significant negative consequences for Mr. Castanon, his family's mental and physical health, and his livelihood. Mr. Castanon would be separated from his family, which may exacerbate his daughter's diagnosed separation anxiety. He is the sole caretaker for his wife, who suffers from diabetes and Graves disease. Mr. Castanon would also be prevented from continuing his employment, which will lead to financial hardship as he is the sole financial support for his wife and minor child. The consequences of Mr. Castanon's re-detention would be serious and irreparable.

**C.  Balance of Equities Tips in Mr. Castanon's Favor and An Injunction is in the Public Interest**

The Court finds that the balance of equities tips sharply in Mr. Castanon's favor, and a preliminary injunction is in the public interest. The third and fourth *Winter* factors, balance of equities and public interest, merge given that the Government is a party.

Here, the potential harm to Mr. Castanon is significant, while the Government's potential harm is minimal. Mr. Castanon faces detention, economic harm to his livelihood, and mental and physical health tolls on his family. The Government risks only a delay in detaining Mr. Castanon. As noted by defense counsel during oral arguments, other than its own resource limitations, there is nothing prohibiting the Government from advancing Mr. Castanon's individual merits hearing that it has rescheduled for December 1, 2025. Tr. at 21. "Faced with a choice 'between minimally costly procedures and preventable human suffering,' . . . the Court concludes 'that the balance of hardships tips decidedly in petitioner's favor.'" *Singh*, 2025 WL 1918679, at *9 (quoting *Hernandez*, 872 F.3d at 996) (simplified).

In the context of immigration detention, "the government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." *Hernandez*, 872 F.3d at 994 ("any detention incidental to removal must bear[ ] [a] reasonable relation to [its] purpose."). At the same time, there is a strong public interest in protecting individuals from unlawful detention. *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) (finding that all citizens have a stake in upholding the Constitution, and therefore public interest concerns are implicated when a constitutional right has been violated). The balance of equities and the public interest favors maintaining the status quo and enjoining the Government from re-detaining Mr. Castanon prior to his individual merits hearing.

**IV.  CONCLUSION**

The Court GRANTS Mr. Castanon's request for a preliminary injunction. The Government may not re-detain Mr. Castanon prior to an individual merits hearing before a United States immigration judge. This Order shall remain in effect until further order of the Court. No

security bond is required, as the Government provides no evidence of costs it will incur due to Mr. Castanon's continued release.

Mr. Castanon's individual merits hearing is currently scheduled for December 1, 2025. Nothing in this Order prevents the Government from advancing the hearing date. The Court sets a Case Management Conference for Tuesday, December 16, 2025, at 9:00 a.m. The parties' Joint Case Management Statement is due by Tuesday, December 2, 2025. The parties shall immediately inform the Court, within three days, if the date of the individual merits hearing before the immigration judge changes, or if there is any other change to Mr. Castanon's immigration status or upcoming immigration proceedings.

**IT IS SO ORDERED.**

Dated: August 13, 2025

Noël Wise
United States District Judge